NICOMA PARK TELEPHONE CO. et al. v. STATE et al.

No. 32251. April 15, 1947.

*180 P. 2d 626.*

442

Albert L. McRill, of Oklahoma City, for plaintiff in error Nicoma Park Telephone Company.

Cantrell, Carey & McCloud and E. J. Flinn, all of Oklahoma City, for plaintiff in error Southwestern Bell Telephone Company.

Floyd Green, James G. Welch, and Charles F. White, all of Oklahoma City, for defendant in error.

Cecil R. Chamberlin, of Frederick, Attorney for Oklahoma Telephone Association, amicus curiae.

DAVISON, V.C.J. This is an appeal from an order of the Corporation Commission establishing a new exchange boundary line between the Oklahoma City telephone exchange, owned and operated by Southwestern Bell Telephone Company, and the Nicoma Park telephone exchange, owned and operated by Nicoma Park Telephone Company, made upon application filed by B. Richardson, telephone engineer for the Corporation Commission, against both of said companies, plaintiffs in error herein.

Nicoma Park is a small community 11¾ miles east of Oklahoma City and for the past 15 years has been supplied with telephone exchange service by Nicoma Park Telephone Company, a partnership composed of J. B. Bolen and other members of his family. This service has been satisfactory in quality and extent except as limited by the effects of war. Oklahoma City and surrounding suburban areas have been so served by the Southwestern Bell Telephone Company. In 1938, while boundary-defining actions were pending in the Corporation Commission between these two companies and other adjacent community telephone exchange companies, an agreement was reached, between all, fixing the exchange boundary lines of each. This was done at the suggestion of the telephone engineer of the commission, and, subsequently, maps showing the agreed boundaries were filed with and as a part of the tariff filings and the pending actions were dismissed. Since then neither company has overstepped the boundary.

The territory here involved is a strip one-half to one mile wide, east and west, and three and one-half miles long, north and south, lying just east of, and contiguous to this boundary line between the two exchange areas. It has been served by the Nicoma Park exchange and contains equipment constituting ten per cent of the total investment of said company, which derives one-eighth of its entire income from its 27 subscribers therein. Five-eighths of all people living between the 1938 boundary and Nicoma Park are subscribers of the service of that company. Service into Oklahoma City is obtained by exchange service into Nicoma Park, toll service into Oklahoma City and exchange service in the latter area.

A number of the residents of the area affected have their business and social contacts, and therefore desire exchange service, in Oklahoma City. The greatest benefit they will receive from the change in boundary is the nonpayment of toll service charge. Mr. Richardson, the telephone engineer, made a survey

of the territory involved at the request of the Corporation Commission, and filed an application for changing the boundary line so that the territory affected would be within the Oklahoma City exchange area. The commission granted the application and made an order requiring the Bell company to furnish exchange service to this area. The order did not prohibit the Nicoma Park company from continuing their service therein, although the final result of such order, as shown by the testimony, will be to "wash out" the Nicoma Park company and "wash in" the Oklahoma City company. The affected area is located about eight miles from the Oklahoma City northwest exchange and three and three-quarters miles from the Nicoma Park exchange. Testimony of expert witnesses was to the effect that the line at which the same quality exchange service at the same cost could be furnished from either exchange was six and one-half miles east of Oklahoma City and five miles west of Nicoma Park. To move the line east or west would have the effect of materially increasing the cost of service by the exchange from which the distance is increased.

Both companies appeal from the order of the commission and raise the following questions: jurisdiction of the Corporation Commission to make the order; that the order was a taking of the property of both companies in violation of the Constitution; that the order is not sustained by the evidence.

The companies contend and the commission admits that jurisdiction to make the order is not contained in 17 O.S. 1941 §133, but it is the theory of the commission that it has such authority by reason of the Constitution, art. 9, sec. 18, which is as follows:

"The Commission shall have the power and authority and be charged with the duty of *supervising, regulating and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their* charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, *and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the commission may, from time to time, alter or amend.* All rates, charges, classifications, rules, and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the commission, within the scope of its authority, shall be unlawful and void. . . . and shall, from time to time, make and enforce such requirements, rules, and regulations as may be necessary to prevent unjust or unreasonable discrimination and extortion by any transportation or transmission company in favor of, or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, transmission, or otherwise, in connection with the public duties of such company. Before the commission shall prescribe or fix any rate, charge or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the company or companies to be affected by such rate, charge, classification, order, rule, regulation, or requirement, shall first be given, by the commission, at least ten days' notice of the time and place, when and where the contemplated action in the premises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses; . . . The authority of the commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount, but its authority to prescribe any other rules, regulations or require-

ments for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws; . . ." (Emphasis ours.)

—and particularly those provisions which we have italicized for convenience in reference. This contention is founded upon the interpretation of this provision in view of the assertion that the Bell company had undertaken to furnish exchange service to other consumers outside the city limits of Oklahoma City, and therefore was duty bound, within reasonable limitations, to serve all persons in the adjoining rural districts who apply for service and, in particular, the residents of this disputed area.

The question presented is: Does the Oklahoma Constitution, art. 9, sec. 18, confer upon the Corporation Commission the authority to require on its own motion, a telephone company, furnishing exchange service to a municipality and some of the adjoining rural territories, to construct facilities for, and to furnish, at a loss or without profit, the same exchange service to a rural area, not theretofore served by it, when that area is being furnished local exchange service with accessible toll service by another telephone company, in defiance of the objection by both companies?

In Simpkins v. Corporation Commission of Oklahoma, 180 Okla. 108, 67 P. 2d 961, we held that:

"The commission is without power or jurisdiction to grant or deny approval and allowance of a telephone where entrance is sought to be made in an unoccupied field."

The differences in the facts in that case and in the present one are that, in the Simpkins Case application was made to the commission for permission to construct and operate a local telephone exchange with toll service connection in a small community, theretofore served only by a rural line from another exchange. Here no application was made for such permission, and the area was already being served by the local company. Therein we said:

"The authority of the commission in this regard is derived from chapter 270, S.L. Okla. 1917 (secs. 3714-3717, O.S. 1931; 17 O.S.A. secs. 131-134)."

Does the exclusive service of the affected territory by one company and the desire of the other company not to serve said area so change the situation that the commission has authority, under the above-quoted constitutional provision, to command the latter company to so serve the locality over the objection of both companies? The practical effect of the order is to increase the expense of exchange service at a reduction in cost to the subscribers, which difference will, finally, have to be borne by all Oklahoma City customers through a rate change.

"The fact that it is a public utility does not necessarily cast upon it the duty of serving the public at large. This duty is not to all men, but to a certain public limited by its profession . . . While the appellant is employing its resources and property in a public service, it must be remembered that these still remain its private property, and that the public cannot assume the role of general manager, and require such property to be used in a service to which the owner has not voluntarily dedicated it." Oklahoma Natural Gas Co. v. Corporation Commission et al., 88 Okla. 51, 211 P. 401.

To the same effect is In re Vance et al., 115 Okla. 8, 241 P. 164.

"Regulation must not be so far extended as to constitute management or operation". Fred Harvey et al. v. Corporation Commission, 102 Okla. 266, 229 P. 428.

"If the contention of plaintiff is correct, every person in the county, or in fact the state, would eventually have a right to compel the defendant to build and maintain a line and furnish him a telephone in his residence or place of business. By extending the line one-half mile in every direction, whenever it is demanded, the company, although or-

ganized solely to operate in one city and its immediate suburbs, would soon have to cover every section of the state, and that regardless of the fact whether the business would justify the cost necessary to cover so much more territory than it was originally organized to maintain or has the capital necessary to accomplish it." Younts v. Southwestern Telegraph & Telephone Co. (Ark.) 192 Fed. 200.

The evidence herein discloses that in 1938 the area here involved was not definitely within the exchange area of either of the plaintiffs in error. Because of this and other adjacent boundary lines uncertainties the various companies had filed applications with the Corporation Commission for a determination of these lines. The engineer for the commission suggested that the companies attempt to reach an agreement. This they did. When the boundaries were agreed upon they were submitted to the commission, which thereupon dismissed the pending actions.

The Bell company then filed with the commission its tariff filings containing a map of the territory it professed and undertook to furnish with exchange service. The territory here involved was not included therein but definitely and undisputably was within the area undertaken and professed to be served by the Nicoma Park company. The latter company extended its lines and service into the area to the extent in quantity and quality possible under wartime restrictions.

The residents of the area had service from the local exchange and, if not satisfactory, the commission could have required that it be made so. It did not have the authority to require an unwilling company, serving an adjacent territory and not professing to serve the disputed area, to furnish satisfactory service. The action appears to be one of attempting to satisfy the residents of the area wanting to communicate with Oklahoma City without paying a toll service charge, even though it be at a financial loss to both companies which,

eventually, would have to be passed on to their other subscribers in the form of increased exchange rates.

"To hold that the Corporation Commission had the authority to compel the appellant to extend its service to include communities it has never professed to serve and does not desire to serve is, in effect, to say that the business policy of appellant, in this regard, may be wrested from the board of directors and lodged with the commission." Oklahoma Natural Gas Co. v. Corporation Commission, supra.

Although the order did not exclude the Nicoma Park company from continuing service to the area, the evidence is undisputed that the practical effect thereof would be to "wash out" that company and destroy the entire value of its franchise, and a high percentage of the value of its equipment in that locality. In addition, the evidence shows that a compliance with the order by the Bell company would be at a financial loss to it.

"Confiscation may result from a taking of the use of property without compensation quite as well as from the taking of the title." Chicago, Rock Island & P. Ry. Co. v. United States, 284 U. S. 80, 76 L. Ed. 177, and cases therein cited.

In McInnes v. McKay, 127 Me. 110, 141 A. 699, the Supreme Court of Maine held that affecting the free use and enjoyment or power of disposition constitutes deprivation of property whether there was an actual physical taking or not. This case was then affirmed by the United States Supreme Court. 279 U.S. 820, 73 L. Ed. 975.

The order herein would result in the taking of the property of both appellants in violation of the Constitution of both the United States and the State of Oklahoma.

The judgment is reversed and the order vacated.

HURST, C.J., and RILEY, OSBORN, BAYLESS, GIBSON, and ARNOLD, JJ., concur. WELCH and CORN, JJ., dissent.