**PHILLIPS PETROLEUM COMPANY,**
a Corporation, Petitioner,

v.

**CORPORATION COMMISSION of Oklahoma et al., Respondents.**

No. 37250.

Supreme Court of Oklahoma.

Nov. 20, 1956.

Rehearing Denied Jan. 8, 1957.

Second Petition for Rehearing Denied July 24, 1957.

Rayburn L. Foster, Harry D. Turner, R. M. Williams, Kenneth Heady, James G. Williams, Jr., Bartlesville, Cecil C. Hamilton, Oklahoma City, for petitioner.

Embry, Crowe, Tolbert, Boxley & Johnson, Smith, Johns, Smith & Neuffer and James A. Rinehart, Oklahoma City, for respondents.

JACKSON, Justice.

This is an original action in this court by petitioner, Phillips Petroleum Company, pursuant to art. 7, § 2, Oklahoma Constitution, for a writ of prohibition against the Corporation Commission of Oklahoma. The action seeks to prohibit the Corporation Commission from proceeding further under the terms and provisions of 52 O.S.1955 Supp. §§ 248–256, H.B. 563, S.L.1955, upon the ground that the Act is unconstitutional.

The Act declares that agriculture constitutes one of the basic foundations of this State. It determines that in many areas agricultural production is restricted by insufficient rainfall; that in many of such areas irrigation can be provided by pumping water from subsurface reservoirs, and in some of those areas the only assured and adequate source of power for pumping water is from developed deposits of natural gas. The use of the gas "on the premises from which it is produced to pump to the surface water to be used for irrigation on such premises is a preferred use, prior in order to all other uses which such gas may be devoted."

The Act further provides that every person owning or operating any well from which natural gas is produced, sold or used off the premises on which said well is located shall, upon request, make gas available to the person engaged in agricultural activities upon such premises in sufficient quantity for the operation of irrigation pumps thereon. It is provided in the event the parties are unable to agree on the prices, terms and conditions under which the gas shall be made available, either party may apply to the Corporation Commission to fix the same. In reaching its determination, the Corporation Commission shall consider the necessity of the applicant for the gas, the value of such gas and its components, the efficient operation of the wells of the producer, the obligations assumed by such producer in the sale or other disposition of the gas, and all other factors relevant to the effectuation of the policy and purposes of the Act with justice to all concerned. Another provision is that nothing in the Act shall create a duty on the part of the producer to assume public utility duties to the public at large in respect to the gas produced from any well.

On January 17, 1956, the agricultural occupants of ten separate tracts of land in Texas County, Oklahoma, filed a joint application in the Corporation Commission alleging that the petitioner herein, Phillips Petroleum Company, produces natural gas from wells located upon each of the several tracts; that the agricultural occupants are in need of and desire gas to operate irrigation pumps on the premises and they request the Corporation Commission to assume jurisdiction under the Act and to fix prices,

terms and conditions under which the gas shall be made available for such use. Thereafter, and on February 11, 1956, Phillips Petroleum Company filed this action in this court seeking a writ to prohibit the Corporation Commission from proceeding further upon the petition of the agricultural occupants pending in the Corporation Commission.

Phillips Petroleum Company will hereafter be referred to as petitioner and the Corporation Commission and agricultural occupants as respondents.

In support of its petition for writ of prohibition petitioner contends that the Corporation Commission is without jurisdiction of the matter pending before it for the reason that the Act, 52 O.S.1955 Supp. §§ 248–256, is unconstitutional.

Among several propositions petitioner contends that the Act, if applied to petitioner, will violate the due process clauses of both the State and Federal Constitutions "in that it attempts to convert Petitioner into a public utility and compels it to devote itself and its property to the performance of a service it has never agreed or undertaken to perform." As a counter proposition respondents assert that the statute in question does not purport to, and does not, in fact, convert petitioner into a public utility in violation of the due process clauses of the State and Federal Constitutions. The issue will be more clearly presented if we quote at length from respondents' brief. Therein it is stated: (Emphasis supplied).

"We frankly admit, in the accepted sense of the phrase, that Phillips is not a public utility; it is no monopoly, and it is in no way dependent upon a franchise from the State for the conduct of its activities. It is not a business which the public, itself, might appropriately undertake. However, it must be as frankly admitted by Phillips that it is a business affected with a public interest and thus subject to the exercise of the police power. * * *."

"Under Point II of petitioner's brief, cases are cited to the effect that the State is without power to compel any person or corporation to become a public utility against its will, and is likewise without power to compel a public utility to serve persons * * * which are beyond the *dedication* which the utility has made of its property. *This rule is established by many cases, and we do not dispute it.* (Apparently referring to Oklahoma Natural Gas v. Corporation Commission, 88 Okl. 51, 211 P. 401 [31 A.L.R. 330], and [Nicoma Park Tel. Co. v. State], 198 Okl. 441, 180 P.2d 626). The answer to petitioner's contention lies in the fact that it erroneously asserts that the statute in question has this effect.

"Petitioner also cites cases holding that where a statute, by legislative fiat, seeks to convert a private person into a public utility, or a common carrier, *such statutes are unconstitutional. We do not dispute this proposition.* It is established by the cases that the Legislature cannot say that a private person or corporation is a public utility or a common carrier and thereby make them such. In most of the cases cited by petitioner, the Legislature attempted, in plain words, to say that all carriers using the highways were common carriers. Such statutes do violate the due process clauses. (Obviously referring to Michigan Public Utilities Comm. v. Duke, 266 U.S. 570 [45 S.Ct. 191] 69 L.Ed. 445).

"The statute in question contains no such provision, but expressly declares to the contrary. Title 52 O.S.A.Supp. § 254, is as follows:

" 'Nothing in this Act shall create in any manner an obligation or duty on the part of the operator of any well or wells who furnishes gas under the terms hereof to furnish gas for use off the premises from which it is produced or to assume in any way public utility duties to the public at large in respect:

to the gas produced from such well, except as such duties may arise from such operator's acts separate and apart from any performance of obligations imposed under this Act.'

"In unmistakable terms, the Legislature has negated the idea that it requires producers of gas to become public utilities. Nor has the Legislature, by the regulation of the use of gas, set forth in the statute, in fact, constituted petitioner a public utility. In the first place, petitioner is not required to serve the public. Petitioners are only required to make gas available to the owner of the land from which it is produced for irrigation purposes, upon the payment by the owner of the value of the gas and its component parts. * * *."

■ The quoted section of the statute merely restricts the area to be served. It is true that there is no requirement that gas be furnished for "use off the premises from which it is produced", or that producer assume "duties to the public at large in respect to the gas produced." But there is a duty to make gas available on those lands from which it is produced. The duty is to a small part of the public and to a small part of the lands in the area. Does this make it any less a public utility function? If the producer of gas can be required to serve a small area and a few people, we see no reason why he could not be required to serve a larger area and more people. It is recognized by respondents that petitioner is not a public utility and has not heretofore dedicated its services to, or engaged in, the business of supplying gas for irrigation or domestic purposes. It is now proposed by the Act in question to require petitioner to engage in a field of service not heretofore performed and in an area not heretofore served. We consider it immaterial that the service is limited to a small area and to a few people. This conclusion brings this case under the rule announced in Oklahoma Natural Gas Co. v. Corporation Commission, 88 Okl. 51, 211 P. 401, 402, 31 A.L.R. 330, supra, wherein this court held:

"To compel the appellant to extend its service to a city, town, or community it has not undertaken or professed to serve, and which it does not desire to serve is tantamount to an appropriation of private property for public use without just compensation."

It should be noted, however, that we are not passing upon the effect of the statute in a case where a producer of gas has heretofore or may hereafter voluntarily devote its services to the market here contemplated.

It is contended by respondents that the statute in question, 52 O.S.Supp.1955 §§ 248–256, supra, is a valid exercise of the police power of the State and does not deprive petitioner of property without due process of law. They insist that the statute in question does not constitute a taking of gas but a regulation, under the police power, of the use that may be made of a small portion of the gas.

Petitioner seems to recognize that gas producing land and wells may be taken by eminent domain for a public use through condemnation proceedings as provided in art. 2, § 24, Oklahoma Constitution, but insists that it cannot be accomplished by a "regulation" under the police power. In petitioner's brief it is stated that "where private property is needed for a genuine 'public use', provision is made by Section 24 of art. 2 of the Oklahoma Constitution whereby it can be so acquired by the power of eminent domain. Such right does not exist under the police power."

It cannot be disputed that "agriculture constitutes one of the basic foundations of this State," and it must be admitted that it would be beneficial to the whole State if its arid areas could be irrigated by dependable and adequate sources of water. This basic need has been recognized by the Legislature of this State in dealing with "Waters and Water Rights", 82 O.S.1951 §§ 1–104. In Section 2 thereof, provision is made for exercising the right of eminent

domain. In 82 O.S.1951 §§ 111–276.19 elaborate provision is made for "Irrigation Districts". In Section 126 thereof, the Board of Directors is given the power of eminent domain in the procurement of "latterals" (canals).

The question here posed is not whether gas producing land and wells may be taken by eminent domain to pump water for irrigation, but whether a producer of gas may be required to make a portion of its gas available, as and when produced, upon prices, terms and conditions to be imposed by the Corporation Commission as a regulation under the police power.

Respondents cite numerous cases as supporting their proposition that the provisions of the statute constitute a valid exercise of the police power. Among those cited, we note the following:

Cities Service Gas Co. v. Peerless Oil & Gas Company, 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190, wherein it was held a state may adopt reasonable *regulations* to prevent economic and physical waste of natural gas and to protect correlative rights of owners through ratable taking, or to protect the economy of the state.

Palmer Oil Corporation v. Amerada Petroleum Corporation, 343 U.S. 390, 72 S.Ct. 842, 96 L.Ed. 1022, where the Compulsory Unitization Act was approved. Followed in Woody v. Corporation Commission, Okl., 265 P.2d 1102.

In Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, this court upheld the compulsory spacing and pooling statute.

It will be observed that all of these cases approve measures taken to prevent economic and physical waste in the development and production of oil and gas, and for adjustment of inequities that must necessarily arise in the enforcement of such measures.

Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, is cited. It appears therein that the New York Legislature determined that milk is necessary, needful and essential; that milk must be clean, sanitary and wholesome; that it is expensive to maintain the sanitary standards required; and in order to enable milk producers to finance the added cost of maintaining these sanitary standards, minimum prices for milk was authorized. Minimum prices were approved by the court as a means to a necessary end. In Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 119 A.L.R. 1471, an Act approving minimum prices for barber work, to enable barbers to maintain necessary sanitary standards, was approved by the Oklahoma court.

Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, approved an assessment to create a fund to guarantee bank deposits, upon the ground that bank failures constitutes an evil that must be corrected by imposing obligations upon the business of banking to correct the evil.

In Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, the court upheld the Oklahoma statute which prohibits an optician from fitting or duplicating lenses in eyeglasses without a prescription from an optometrist. This was upheld upon the theory that this requirement was designed to correct an existing evil.

It will be observed that all of the foregoing cases deal with statutes that are regulatory of a business, profession, or industry. None of the cases cited in respondents' brief authorize a taking of property from one business or industry, under the police power, to be used in another business or industry clothed with a public purpose.

The following cases cited by respondents are to the effect that land may be taken when promotive of the general welfare. However, it will be noted that the "taking" is accomplished by eminent domain.

In Berman v. Parker, 348 U.S. 26, 75 S. Ct. 98, 99 L.Ed. 27, the court upheld an Act authorizing redevelopment of substandard housing and blighted areas in the District of Columbia. This "Public Welfare Project" was approved and authorized under the "Police Power", but the taking of the building in question was accomplished by eminent domain.

In Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085, condemnation was approved in Utah for land to widen an irrigation ditch so one individual could be supplied with water for irrigation.

We are cited to no case where private property has been "taken" for a public purpose *by* the police power. Cases are cited where taking is authorized under the police power, but the "taking" was accomplished by condemnation under the power of eminent domain.

In 29 C.J.S., Eminent Domain, § 6, p. 784, it is said:

"It has been said to be difficult to distinguish consistently between the right of eminent domain and the police power, so that they have sometimes been confused; however, they are quite distinct, although analogous. Briefly, eminent domain takes property because it is useful to the public, while the police power regulates the use of property or impairs rights in property because the free exercise of these rights is detrimental to public interest; and the police power, although it may take property, does not, as a general rule, appropriate it to another use, but destroys the property, while by eminent domain property is taken from the owner and transferred to a public agency to be enjoyed by the latter as its own. More fully, many statements of the distinction agree to the effect that in the exercise of eminent domain private property is taken for public use and the owner is invariably entitled to compensation, while the police power is usually exerted merely to regulate the use and enjoyment of property by the owner, or, if he is deprived of his property outright, it is not taken for public use, but rather destroyed in order to promote the general welfare, and in neither case is the owner entitled to any compensation for any injury which he may sustain, for the law considers that either the injury is damnum absque injuria or the owner is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power."

In 16 C.J.S., Constitutional Law, § 175a, p. 896, it is stated:

"Generally police power operates in the field of regulation, except possibly in some cases of emergency such as conflagration or flood when private property may be temporarily used or damaged or even destroyed to prevent loss of life or to protect the remaining property of an entire locality. * *."

Thus it becomes apparent that where property is useful to the public and is to be taken from the owner and transferred to a public agency to be enjoyed by the latter as its own, and where the owner is entitled to compensation, the accepted procedure is by condemnation under the power of eminent domain. In Oklahoma "due process" for taking private property for a public use is provided by art. 2, § 24, Oklahoma Constitution, and statutes in implementation thereof.

Art. 2, § 24, provides in part:

"Private property shall not be taken * * * for public use without just compensation. Such compensation * * * shall be ascertained by a board of commissioners of not less than three freeholders, * * *. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of * * * trial by jury in a court of record."

We are of the opinion and hold that 52 O.S.Supp. 1955 §§ 248–256, which requires a producer of natural gas to make a portion of its gas available as and when produced for use in pumping water for irrigation of agricultural lands from which the gas is produced, a purpose to which it had not theretofore dedicated its property, and authorizing the Corporation Commission to fix the prices, terms and conditions

under which the gas shall be made available, is not a regulation under the police power but would, if enforced, constitute a taking of property, without due process of law.

The writ of prohibition is granted.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY and BLACKBIRD, JJ., concur.

WELCH, CORN and CARLILE, JJ., dissent.