[No. 4178–6–III.   Division Three.   October 8, 1981.]

PRESCOTT TELEPHONE AND TELEGRAPH COMPANY, *Appellant,*
v. THE UTILITIES AND TRANSPORTATION COMMISSION,
ET AL, *Respondents.*

*Brian Frederick* and *Frederick, Beckley & Cooper,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Douglas N. Owens, Assistant,* for respondent Utilities and Transportation Commission.

*James A. Smith* and *Marianne Holifield,* for respondent Pacific Northwest Bell.

ROE, J.—Prescott Telephone and Telegraph Company (Prescott) operates a telephone exchange in Roslyn. Pacific Northwest Bell Telephone Company (PNB) operates the exchanges in adjacent Cle Elum and Easton. In telephone exchange maps submitted in 1929 and 1948 PNB also claimed coverage of the North Easton Ridge area, which lies between the Roslyn exchange and the Easton and Cle Elum exchanges. Although PNB has included this area in its exchange maps, presently no one lives in the service area, nor does PNB expect any service to be needed in the near future.

In May 1977, Prescott filed a complaint with the Washington Utilities and Transportation Commission (WUTC), seeking to include the area as part of its service area, or at least to have the area declared open. PNB responded the area had been within its service area for at least 20 years, that it had the facilities to serve the area should service be needed, and that the WUTC had no authority to transfer the area to Prescott. After a hearing, the WUTC entered

findings of fact and conclusions of law and proposed an order dismissing Prescott's complaint. After considering Prescott's exceptions to the order, the WUTC affirmed its proposed order as the final one. On appeal, the Superior Court sustained the WUTC order. Prescott now asks this court to reverse.[1]

■■ The Washington administrative procedures act governs review. Reversal may be had only if the WUTC's findings, conclusions or decisions are

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(f) arbitrary or capricious.

RCW 34.04.130(6). Prescott presents two issues: first, whether the WUTC properly prescribed the exchange areas, and second, whether the WUTC ought to have declared the North Easton Ridge area open. Resolution of each of these issues depends upon a different standard of review. The first issue is a mixed question of law and fact, *i.e.*, a case in which "there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . ." *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974); *see also Daily Herald Co. v. Department of Employment Security*, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979). "Agency decisions regarding mixed questions of law and fact are reviewed pursuant to subsection (d) of RCW 34.04.130(6), the 'error of law' standard." *Daily Herald Co., supra* at 561–62; *Brandley v.*

---

[1]PNB argues this appeal should be dismissed as Prescott lacks standing to maintain the action. PNB failed to raise this argument either at the administrative hearing or in the superior court. Its failure to do so precludes our consideration of the issue now. *Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 631, 590 P.2d 816 (1979).

*Department of Employment Security,* 23 Wn. App. 339, 342, 595 P.2d 565 (1979). Resolution of the second issue, however, rests solely with a factual determination; thus, we are obligated to sustain the WUTC's findings unless they are either clearly erroneous or arbitrary and capricious. RCW 34.04.130(6)(e), (f); *see Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969) (clearly erroneous test); *DuPont–Fort Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971) (arbitrary and capricious test).

Prescott's first challenge is to the failure of the WUTC to issue an order prescribing the exchange area. RCW 80.36-.230 grants the WUTC "the power to prescribe exchange area boundaries and/or territorial boundaries for telephone companies." The statute does not set forth the manner by which the prescription should take place. Neither does RCW 80.36.240,[2] although it is entitled "Exchange areas for telephone companies—Procedure to establish."

The WUTC is charged with regulating in the public interest "the rates, services, facilities, and practices of all persons engaging within this state in the business of supplying any utility service or commodity . . ." RCW 80.01-.040(3). It is empowered to make any rules or regulations necessary to carry out its powers and duties. RCW 80.01-.040(4).

Both the WUTC and PNB contend PNB's filing of exchange area maps as part of its tariffs is sufficient to prescribe the area pursuant to RCW 80.36.230. The procedures for setting tariffs are found in WAC 480–80. A tariff must contain the rate schedules and rules and regulations relating to charges and service. WAC 480–80–030(3). The rate

---

[2]RCW 80.36.240:

"The commission in conducting hearings, promulgating rules, and otherwise proceeding to make effective the provisions of RCW 80.36.230 and 80.36.240, shall be governed by, and shall have the powers provided in this title, as amended; all provisions as to review of the commission's orders and appeals to the supreme court or the court of appeals contained in said title, as amended, shall be available to all companies and parties affected by the commission's orders issued under authority of RCW 80.36.230 and 80.36.240."

schedule page of the tariff must contain exchange area maps. WAC 480–80–230(2)(v). Although we must give great weight to an agency's construction of its enabling statute, *State Liquor Control Bd. v. State Personnel Bd.*, 88 Wn.2d 368, 561 P.2d 195 (1977); *Spry v. Miller*, 25 Wn. App. 741, 745, 610 P.2d 931 (1980), we believe the WUTC itself has issued a regulation which refutes its present contention that when maps are filed as a part of the tariff the area is prescribed. WAC 480–80–270(1), promulgated in 1969, provides:

(1) The filing of tariffs with the commission does not imply that the provisions of same are approved, unless the commission has prescribed the rates, rules and regulations or practices in an order, and utilities must not in any way make such inference.

Thus, if the WUTC is to establish any *new* exchange areas, we hold it must do so by issuance of an order, not by mere acceptance of tariffs.

However, we do not believe WAC 480–80–270(1) resolves the issue. PNB's tariff filings in 1929 and 1948 comported with the WUTC's then-existing procedures. In an opinion issued in 1956, the Attorney General noted: "[F]or many years prior to 1941 exchange area maps were utilized by the commission to define telephone service areas." Attorney General Opinion, Mar. 15, 1956, at 4. The Attorney General noted at page 5:

As an integral part of its telephone tariff activities both before and after 1941 the commission has, in effect, prescribed exchange area or territorial boundaries through its requirement that each telephone company have on file with the commission a map setting forth the boundaries of the area or areas in which such company is offering telephone service under its filed tariffs, rules and regulations. . . . The commission may be said to have utilized its tariff functions as the means of making R. C. W. 80.36.230 effective.

There is no evidence in the record that PNB's filings of its Cle Elum and Easton exchanges were not conducted according to the statute and regulations of the commission.

Thus, PNB must be deemed to have the right to provide service to the disputed area should the need arise.

■ Therefore, Prescott's only challenge to PNB's exchange areas is under RCW 80.04.110, which allows complaints of "any act or thing done or omitted to be done by any public service corporation in violation, or claimed to be in violation, of any provision of law or of any order or rule of the commission . . ." Telephone companies in this state are required to act fairly, justly, and reasonably and to keep their facilities and equipment in good condition and repair. RCW 80.36.080. Prescott urges this cannot be the test here, because there are no facilities or equipment in the disputed strip, but rather the broad public interest should be the guide. We disagree. The exchange area, as has been decided, has been given to PNB. There is no showing it has not responded to any request for service or that its equipment is inadequate. After considering evidence presented by both Prescott and PNB, the WUTC found that although there was no demand for service in the disputed area, PNB could provide such service if requested. PNB should not be deprived of its exchange area when it has done nothing wrong and has not failed to meet any requests for service. A review of the findings is limited to a determination of whether they are arbitrary and capricious or clearly erroneous. We believe they are neither. PNB, through its installation of facilities and cable pairs, has enhanced a property right to the area. *Nicoma Park Tel. Co. v. State,* 198 Okla. 441, 180 P.2d 626 (1947). *See also State ex. rel. Doniphan Tel. Co. v. Public Serv. Comm'n,* 377 S.W.2d 469 (Mo. App. 1964). Once a service area has been established, the area should remain undisturbed unless it is clearly shown to be arbitrary and unreasonable. *Subscribers v. Speed Tel. Co.,* 34 Pub. U. Rep. 3d (PUR) 32, 36 (Mo. P.U.C. 1960). For the WUTC to have declared the disputed area as either open or within Prescott's area would have deprived PNB of its interest in the exchange area as established by its prior action. The WUTC acted properly in dismissing Prescott's complaint. Its actions

were neither contrary to law, clearly erroneous, or arbitrary and capricious. Therefore, the decision of the WUTC is affirmed.

McINTURFF, C.J., and MUNSON, J., concur.