Dear Representative Bill Case,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is a municipality authorized by law to acquire property byeminent domain, then sell or lease said property to private thirdparties for redevelopment purposes?
¶ 1 "A city has no inherent power or authority; it possesses and can exercise only those powers expressly granted, or incidental to powers expressly granted, by the state." City ofHartshorne v. Marathon Oil Co., 593 P.2d 97, 99 (Okla. 1979) (citing Shipp v. Southeastern Okla. Indus. Auth.,498 P.2d 1395, 1398 (Okla. 1972)). The power of eminent domain is an inherent attribute of state sovereignty. Hennen v. State ex rel.Short, 267 P. 636, 638 (Okla. 1928). The State of Oklahoma authorizes municipalities to "[a]cquire, own, and maintain . . . real estate for sites and rights-of-way for any municipal purpose" and to "[e]xercise the right of eminent domain for any municipal purpose, within or without its corporate limits." 11O.S. Supp. 2000, § 22-104[11-22-104](2), (3). The city's charter may further restrict a municipality's powers of eminent domain. Ruthv. Oklahoma City, 287 P. 406, 409-10 (Okla. 1930).
¶ 2 Eminent domain is the legal proceeding by which private property is taken by the government for public use, for which the owner is entitled to compensation. Phillips Petroleum Co. v.Corp. Comm'n, 312 P.2d 916, 919 (Okla. 1956). The Oklahoma Constitution[1] provides that "[p]rivate property shall not be taken or damaged for public use without just compensation. . . . In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question." Okla. Const. art. II, § 24; see alsoDelfeld v. City of Tulsa, 131 P.2d 754, 759 (Okla. 1942). A taking for "public use" sufficient to support the city's exercise of the right of eminent domain has been held to include "any taking which inured to the benefit of the entire citizenry."Sublett v. City of Tulsa, 405 P.2d 185, 196 (Okla. 1965).
¶ 3 The powers of eminent domain have been exercised in modern times through urban renewal. Urban renewal blends a municipality's eminent domain powers with a commitment to "afford maximum opportunity, consistent with the sound needs of the municipality as a whole, to the rehabilitation or redevelopment of the urban renewal area by private enterprise." 11 O.S.1991, § 38-104[11-38-104] (emphasis added).
¶ 4 Utilizing urban renewal, a municipality may declare that a blighted area exists in the community and that the rehabilitation of the area is in the public interest. 11 O.S. Supp. 2000, §38-105[11-38-105](B). In a municipality of under 10,000 inhabitants, the majority must approve of the authority at an election. Id. § 38-105(C). The Commissioners of the Urban Renewal Authority are appointed by the mayor, subject to the approval of the town's governing body. 11 O.S. 1991, § 38-107[11-38-107](B). The Authority then prepares a plan for redevelopment and submits the plan to the municipal governing body. Id. § 38-106(B).
¶ 5 An Urban Renewal Authority may acquire property by eminent domain and subsequently sell it to a private party, and "may" impose "such covenants, conditions, and restrictions" as may be necessary "to . . . carry out the purposes of" the urban renewal laws. 11 O.S. Supp. 2000, § 38-114[11-38-114](A). A municipality's authority to acquire and dispose of land is also addressed.
 B. The municipality may transfer real property necessary and convenient to the execution of an approved urban renewal plan, or any interest therein, acquired by it, to the Urban Renewal Authority or a redevelopment corporation established under the provisions of this article. The transfer of real property or any interest therein to the Urban Renewal Authority shall be on such terms as may be deemed to be desirable and in the public interest. Such property, or interest therein, transferred to a redevelopment corporation shall be at its fair values for uses in accordance with an approved urban renewal plan. Any such transfer of real property or interest therein shall be by agreement to be executed only after approval of the urban renewal plan by the municipal governing body.
Id. (emphasis added).
¶ 6 Therefore, municipal property transferred to an Urban Renewal Authority need only "be on such terms as may be deemed to be desirable and in the public interest." Id. Property transferred by a municipality to a redevelopment corporation, on the other hand, may only be used for purposes specified in the urban renewal plan, and may carry other restrictions on its use.[2] Id. § 38-114(C), (D). In effect, the "public purpose" which enabled the municipality to acquire the land by eminent domain continues, albeit in the hands of a private developer.
¶ 7 Therefore, Oklahoma's urban renewal laws provide the proper statutory mechanism by which a municipality may acquire property with the intent and purpose of eventually transferring the property to a private party.
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Oklahoma's urban renewal laws, 11 O.S. 1991 Supp. 2000, §§38-101-38-123, provide the statutory mechanism by which amunicipality may acquire real property by eminent domain with theintent to transfer that property to a private party fordevelopment consistent with the urban renewal plan.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
WALTER W. JENNY JR. ASSISTANT ATTORNEY GENERAL
[1]
 The power of eminent domain does not depend for its existence on a specific grant in the Constitution; it is inherent in sovereignty and exists in a sovereign state without any recognition of it in the Constitution. The provisions found in most of the state Constitutions relating to the taking of property for the public use do not by implication grant the power to the government of the state, but limit a power which would otherwise be without limit.
Hennen, 267 P. at 638 (citations omitted).
[2]
 C. Purchasers or lessees of real property in an urban renewal area and their successors and assignees shall be obligated to devote such real property only to the uses specified in the urban renewal plan, and may be obligated to comply with such other requirements as the Urban Renewal Authority or the municipal governing body may determine to be in the public interest . . .
 D. The Urban Renewal Authority . . . may provide that such purchaser or lessee shall be without power to sell, lease or otherwise transfer the real property without prior written consent until such purchaser or lessee has completed the construction of any or all improvements which such purchaser has obligated himself to construct thereon." 11 O.S. Supp. 2000, § 38-114[11-38-114].